**In re Dennis Joseph MAZZOLA and Anne Tresa Mazzola, Debtors.**

**Wayne LaVANGIE and Gayle LaVangie, Plaintiffs,**

**v.**

**Dennis Joseph MAZZOLA and Anne Tresa Mazzola, Defendants.**

**Civ. A. No. 80–1287–N.**

United States District Court, D. Massachusetts.

Dec. 23, 1981.

Paul J. Driscoll, Marshfield, Mass., for plaintiffs.

Leonard M. Krulewich, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This is an appeal from an order of the bankruptcy court, Lavien, J., denying a dis-

charge in bankruptcy under 11 U.S.C. § 727(a)(4) on the ground that the debtors, Dennis and Anne Mazzola, "knowingly and fraudulently ... made a false oath or account" in connection with their petition in bankruptcy. 4 B.R. 179 (Bkrtcy.). Specifically, the bankruptcy court found that the debtors in their bankruptcy petition had denied owning any interests in stock and had denied either having transferred or having suffered an attachment upon any interest in real property within the preceding year, when in actuality Mr. Mazzola had owned all the outstanding stock of a home construction corporation and the Mazzolas had recently transferred personally held real estate to that corporation shortly after securing the dissolution of an attachment on that property in a state court action.[1] Judge Lavien rejected the protestations of Mrs. Mazzola that she had not read the false documents prior to submitting them, finding that the papers themselves recited that she had read them and that the evidence showed Mrs. Mazzola to be the family member who in the ordinary course of affairs maintained the family financial records. The court also rejected Mr. Mazzola's explanations that his misstatements were accidental and the result of a misunderstanding that his stock holdings need not be reported because they were worthless, that the attachment need not be reported because it was of only two weeks duration and he considered it illegal and void, and that the real estate sale question called only for the reporting of *current* holdings. There was no evidence that the corporation in which Mr. Mazzola held stock was insolvent or had gone out of business, and the question about real estate transfers, the evidence showed, appeared under the boldface heading *"Transfers* of Property." (emphasis supplied) The judge noted that the explanations of both Mazzolas were lacking in credibility and that their false statements were clearly self-serving. Citing *In re Mascolo,* 505 F.2d 274 (1st Cir. 1974), the court found the falsehoods mate-

---

1. After the dissolution of that attachment and the subsequent transfer of the underlying real estate, the Mazzolas abandoned the defense of the state court action and filed a petition in bankruptcy.

rial in that they at least bore on the discovery of the debtors' assets, and citing *Mascola* and *In re Diorio,* 407 F.2d 1330, 1331 (2d Cir. 1969), *inter alia,* it found the misstatements to have been made "knowingly and fraudulently" under the statute in that they were offered with reckless disregard for their truth or falsity.

■ Under Fed.R.Bankruptcy P. 810, the bankruptcy court's *factual* findings are to be accepted unless "clearly erroneous," with "due regard" given to the bankruptcy judge's opportunity to assess the credibility of the witnesses who appeared before him. But, of course, this court must independently determine the correctness of the *law* upon which the bankruptcy court relied in making its factual findings.[2] While the bankruptcy court correctly cited the recent First Circuit case of *In re Mascolo, supra,* to support his finding that the factual misstatements involved here were material, that case specifically left undecided the issue of whether proof of reckless misstatement is sufficient to constitute a false oath or account under § 727. 505 F.2d at 276 n.3. What *Mascolo* does say is that the trier of fact may reasonably infer fraudulent intent from an unexplained false statement. *Id.* at 276. While a case cited by *Mascolo* itself as well as by the bankruptcy court, *In re Diorio, supra,* did state that "reckless indifference to the truth . . . is the equivalent of fraud," that remark was made in a totally different context, more by way of admonition to the referee in bankruptcy for affidavit by the bankrupt than in the course of adjudicating an issue fully briefed and argued and properly before the court for its decision. In *Diorio,* the district court had held the referee's finding that the

bankrupt's false statements were not knowingly and fraudulently made to be clearly erroneous; the Second Circuit affirmed, adopting the district court's opinion and adding only that it was "painfully impressed" by referee's indifference to the false affidavit. The district court had treated the false statements as fully knowing and fraudulent, and not merely reckless in nature. Specifically, it had held that there were reasonable grounds to believe that the statements involved were false, and that the bankrupt had not sustained the resultant burden upon him under the Bankruptcy Act to prove that the false statements were *not* knowingly and fraudulently made. *In re Diorio,* cited no authority for the proposition for which it was later quoted by *Mascolo* and by the bankruptcy court in this case. Indeed, case law under predecessor Bankruptcy Acts had often stated that in order to deny a discharge for a false oath or account, "it is settled that the alleged false oath must contain all the elements involved in *perjury at law,* namely, an *intentional* untruth in a matter material to an issue which is itself material", *Troeder v. Lorsch,* 150 F. 710, 713 (1st Cir. 1906) (emphasis supplied); *accord, Tancer v. Wales,* 156 F.2d 627, 628 (2d Cir. 1946). Indeed, one old case had squarely held that "perjury is *not* committed by any mere reckless swearing to what the witness would, if more cautious, learn to be false; but the oath must be willfully corrupt." *U.S. v. Moore,* 26 Fed.Cas. 1304, 1305 (No. 15,803) (D.Mass.1873). The court held that reasonable cause to believe a statement false could lead the trier of fact to infer that the bankrupt knew it to be false, but "reasonable cause of belief . . . is not the legal equivalent of knowledge." *Id.*[3]

**2.** Because this case presents only the single and relatively simple issue of the sufficiency of the evidence and the law to support a finding of a knowing and fraudulent false oath under the Bankruptcy Code, this court has decided to rely upon the papers alone and to proceed without the benefit of oral argument. *See* Rule 15 of the First Circuit Rules Governing Appeals from Bankruptcy Judges.

**3.** *Troeder v. Lorsch, supra,* which analogized false oaths in bankruptcy to common law per-

jury, was decided under the amended Bankruptcy Act of 1898, which denied discharges to a bankrupt who had "committed an offense punishable by imprisonment as herein provided," 150 F. at 710, and hence clearly required proof meeting criminal rather than civil standards of intent. Under that statute, it was declared a criminal offense to have "made a false oath or account in or in relation to, any proceeding in bankruptcy." *Id.* at 711. These provisions were substantially preserved in old Title 11 of the United States Code prior to its

█ In any event, it is not necessary at this juncture to decide this somewhat difficult issue of law. As *Mascolo* itself permits the trier of fact to infer knowing and fraudulent falsehood (as those terms are most obviously comprehended) from an unexplained false statement, 505 F.2d at 276, and since the bankruptcy court in this case did not expressly find the Mazzolas' misstatements to be merely reckless and not with full knowledge and fraudulent intent, proper judicial practice counsels that the matter be remanded for a determination by the judge of that issue.

wholesale revision in 1978. Under former § 32(c) of that Title, a discharge would be denied when "the bankrupt ha[d] (1) committed an offense punishable by imprisonment as provided under section 152 of Title 18 . . . .," which section made it a criminal offense to "knowingly and fraudulently make [ ] a false oath or account in or in relation to any bankruptcy proceeding." The 1978 revision of the Bankruptcy Code changed the form of the Title 11 discharge section to delete any specific reference to a related criminal provision and instead itself to enumerate the relevant ground for denial of a discharge. Thus, 11 U.S.C. § 727(a)(4) denies the bankrupt a discharge when he has "knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account . . ." Title 18 retains the related but now not cross-referenced criminal provision which declares it a criminal offense to "knowingly and fraudulently make[ ] a false oath or account in or in relation to any case under title 11." 18 U.S.C. § 152. Although the Bankruptcy Code thus no longer, as it did in the days of *Troeder,* specifically refers in its denial of discharge provisions to a criminal offense, it contains the same language as the related criminal provision and therefore may well be thought still to require proof meeting a criminal standard of intent identical to that required under a common law perjury charge. Indeed, the House and Senate committee reports on the new discharge provisions spoke in criminal terminology: "the fourth ground for denial of discharge is the commission of a bankruptcy *crime,* although the standard of proof is preponderance of the evidence rather than proof beyond a reasonable doubt. These *crimes* include the making of a false oath or account . . . ." S.Rep.No.95–989, *reprinted in* Collier on Bankruptcy at 98 (15th ed. 1979, Appendix 3); H.Rep.No.95–595, *reprinted in* Collier on Bankruptcy at 304 (15th ed. 1979, Appendix 2), U.S.Code Cong. & Admin.News 1978, p. 5787. (emphasis supplied).