In the Matter of Dan A. HUSSAN and Lynda L. Hussan, Debtors.

David W. ALLARD, Jr., Trustee, Plaintiff,

v.

Dan A. HUSSAN and Lynda L. Hussan, Defendants.

Bankruptcy No. 84–00563–B. Adv. No. 84–0497–B.

United States Bankruptcy Court, E.D. Michigan, S.D.

Sept. 27, 1985.

Schlussel, Lifton, Simon, Rands, Kaufman, Galvin & Jackier by Gary H. Cunningham, Southfield, Mich., for trustee.

Austin Hirschhorn, Southfield, Mich., for debtors.

## MEMORANDUM OPINION

GEORGE BRODY, Bankruptcy Judge.

Mr. Dan A. Hussan was the president, administrator and a major stockholder of the Institute for Mental Health, P.C., a corporation engaged in providing outpatient mental health services. On February 16, 1984, Mr. Hussan and his wife filed a personal joint voluntary case under Chapter 7.[1] Thereafter, the trustee filed objections to the discharges of the debtors. The trustee contends that the discharges of Mr. and Mrs. Hussan should be denied pursu-

---

1. On October 14, 1983, the Institute for Mental Health filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. The case was eventually converted to Chapter 7.

ant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A) and (D), and 727(a)(5) and, additionally, that Mr. Hussan's discharge should also be denied pursuant to section 727(a)(7). The parties have stipulated that the transcripts of testimony given at the Section 341 Meeting of Creditors, a Rule 2004 examination conducted on May 23, 1984, and the fraudulent conveyance trial in the matter of *Allard v. Rakowski (In re Hussan)*, Adversary Proceeding No. 85–1001, are to be part of the record in this proceeding.

*Objection to Discharge of Mr. Hussan*

 Initially, the trustee maintains that Mr. Hussan's discharge should be denied pursuant to section 727(a)(4)(A) because of false answers he gave under oath to questions relating to the whereabouts of his books and records, his ownership interest in property, and his transfers of property prior to the filing of the bankruptcy petition. Section 727(a)(4)(A) provides that the court shall grant an individual debtor a discharge, unless, "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A). A fundamental purpose of this Code section "is to ensure that dependable information is supplied for those interested in the administration of the bankruptcy estate on which they can rely without the need for the trustee or other interested parties to dig out the true facts in examinations or investigations." *Guardian Industrial Products, Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 807 (Bankr.D.Mass.1981). To sustain an objection to discharge pursuant to section 727(a)(4)(A), the trustee must establish that the debtor knowingly made a false statement under oath with the intent to defraud his creditors regarding a matter material to the administration of his estate. *Patton v.*

*Hooper (In re Hooper)*, 39 B.R. 324, 329, 11 Bankr.Ct.Dec. (CRR) 1311 (Bankr.N.D. Ohio 1984); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 12 Bankr.Ct.Dec. (CRR) 855 (11th Cir.1984); *Pigott v. Cline (In re Cline)*, 48 B.R. 581, 584 (Bankr.E.D. Tenn.1985). "Materiality of a false oath does not depend upon whether the falsehood is detrimental to creditors." *In re Chalik*, 748 F.2d at 618. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* "Proof of intent to defraud may be inferred from the facts." *In re Cline*, 48 B.R. at 584.

*False Oath with Respect to Books and Records*

██ In his Statement of Affairs, Mr. Hussan stated that his books and records were not available because they had been destroyed by a flood.[2] The trustee contends that these statements constitute a false oath and, therefore, Mr. Hussan's discharge must be denied pursuant to section 727(a)(4)(A).

Mr. Hussan maintained that sometime in 1981 or 1982 he moved his personal financial records to the Institute for Mental Health, and that the records were destroyed when a flood occurred at the Institute. The record clearly establishes that the answers given by him in the Statement of Affairs were false.

Sometime in December, 1982, a water pipe broke on the second floor of the Institute for Mental Health, and water flowed down to the first floor and from there down a basement wall located behind some

---

2. The questions and answers in issue with respect to this allegation are as follows:

| Question | Answer |
| --- | --- |
| 2.c. In whose possession are your books of account and records? (Give names and addresses) | 2.c. Books not available. |
| 2.d. If any of these books or records are not available, explain. | 2.d. Destroyed by flood in 1983. |
| 2.e. Have any books of account or records relating to your affairs been destroyed, lost, or otherwise disposed of within the 2 years immediately preceding the filing of the original petition herein? (If so, give particulars, including date of destruction, loss, or disposition, and reason therefor.) | 2.e. Yes, destroyed by flood in 1983. |

filing cabinets. The employee who discovered and reported the flood testified that the accumulation of water in the basement was minimal, that at its peak it reached only one-half of the way up to the arch of his foot, and that the files in the basement were not damaged. He also testified that the filing cabinets did not contain any financial records, but held only treatment charts for closed cases. The employee's testimony was corroborated by that of a Mr. Van Goethem, an accountant retained by Mr. Hussan in November of 1983, approximately eleven months after the records were allegedly destroyed. Mr. Van Goethem testified that he prepared Mr. Hussan's personal income tax returns for the years 1981, 1982 and 1983 using records made available to him by Mr. Hussan—the very records which Mr. Hussan, under oath in his Statement of Affairs, stated were destroyed by flood. The evidence clearly establishes that Mr. Hussan made a false oath when he swore that his financial records were destroyed by flood [3], that he knew the oath was false, and that the false oath was made willfully and with intent to conceal the books and records, which are material to the administration of the estate, from the trustee and creditors.[4]

*False Oath with Respect to Disposition of Airplane*

■ In answer to question 11.b. of the Statement of Affairs, Mr. Hussan stated that he had not transferred any real or personal property during the year immediately preceding the filing of the petition.[5] The trustee contends that the answer given to this question was false, and therefore also requires that the discharge of Mr. Hussan be denied.

The debtor purchased a Beechcraft Baron 55 airplane in 1979 for approximately $42,000. He sold the plane to a Mr. Carl Rakowski on September 14, 1983, approximately five months prior to the filing of the petition in bankruptcy, for at least $16,000, and perhaps as much as $29,600.[6] The only evidence offered to explain the failure to list this transaction in the Statement of Affairs was the debtor's testimony that he had been involved in two automobile accidents, and that the accidents had impaired his memory. This explanation is not persuasive. No medical testimony was offered to substantiate this assertion. Employees who worked with him on a daily basis at the Institute of Mental Health, where he was the Administrator, testified that they observed no significant changes after the accidents in the debtor's conduct or ability to function. The evidence establishes that if in fact his memory was impaired, it was selectively impaired. He remembered that which he wanted to remember, and conveniently forgot that which he chose to conceal. The statement that he

---

**3.** In fact, at the trial Mr. Hussan testified that he had some of the personal records at home, and that others were in the possession of his accountant.

**4.** The duty to keep and produce books and records is "to insure that dependable information is supplied to the trustee and creditors on which they can rely in tracing the debtor's financial history." *In re Kottwitz,* 42 B.R. 566, 569 (Bankr.N.D.Ala.1984).

**5.** The question and answer in issue with respect to this allegation is as follows:

| Question | Answer |
|---|---|
| 14.b. Have you made any other transfer, absolute or for the purpose of security, or any other disposition which was not in the ordinary course of business during the year immediately preceding the filing of the original petition herein? (Give a description of the property, the date of the transfer or disposition, to whom transferred, or how disposed of, and state whether the transferee is a relative, partner, shareholder, officer, director or insider, the consideration, if any, received for the property, and the disposition of such consideration.) | 14.b. No |

**6.** The question as to the amount for which the

had not transferred any property during the year immediately preceding the filing of the petition in bankruptcy is false. The record clearly establishes that the false statement dealt with a matter material to the administration of the estate, and that the statement was made willfully and with the intent to conceal the airplane transaction from the trustee and his creditors.

*False Oath with Respect to Failure to Disclose Florida Property*

■ In his Schedules, the debtor failed to list an ownership interest in a mobile home lot in Lakeland, Florida. The trustee contends that the failure to list this property also constitutes the making of a false oath, and also requires that the debtor's discharge be denied.

In September of 1979, Mr. Hussan's parents conveyed the mobile home lot to him and his mother as joint tenants with the right to survivorship. He knew that he held title to that property with his mother and was aware of his interest when the Schedules were completed. A debtor has a duty to disclose whatever ownership interest he holds in property. "The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the Debtor's hands during the period prior to his bankruptcy." *In re Diodati*, 9 B.R. 804, 807 (Bankr.D.Mass.1981). "It is not for the debtor to determine which assets should be disclosed to his creditors." *In re Gugliada*, 20 Bankr. 524, 528, 9 Bankr.Ct.Dec. (CRR) 339 (Bankr.S.D.N.Y.1982). "It is the debtor's role simply to consider the question carefully and answer it completely and accurately." *LaVangie v. Mazzola (In re Mazzola)*, 4 B.R. 179, 182 (Bankr.D.Mass. 1980), *remanded on other grounds*, 23 B.R. 263 (D.Mass.1981).

The debtor testified that he did not list the Florida property because it had been conveyed to him solely to accommodate his mother's concern that his father would not be able to manage the property in the event of her death, and he therefore considered the property to be his parents' rather than his. Mr. Hussan's answer to question eight of the Statement of Affairs belies this explanation. Question eight requires a debtor to indicate whether he is holding property for some other person.[7]

Mr. Hussan answered this question by stating he was holding a Jeep for a Helen Swift. Thus, when he was holding property for another entity, he so indicated. If in fact he believed he was holding the Florida property for his mother or father, it would have been simple for him to so state just as he did with reference to the property he was holding for Ms. Swift.

The record clearly establishes that the debtor intentionally made a false oath dealing with a matter material to the administration of the estate by failing to disclose his ownership interest in the Florida property, and that the omission was made willfully and with the intent to conceal his ownership interest in the Florida property from the trustee and his creditors.

■ There is no merit to Mr. Hussan's contention that the objections should be dismissed because he amended his Schedules and Statement of Affairs to reflect the transfer of the airplane and disclosed his record ownership of the Florida property. At the Section 341 Meeting on March 15, 1984, when asked about ownership of property located in Florida, he denied that he owned any such property. At a Rule 2004 examination on May 23, 1984, he again denied having any ownership interest in Florida property. On June 14, 1984, the trustee filed the objections to the debtor's

---

plane was sold is in issue in a fraudulent conveyance action instituted by the trustee, *David W. Allard, Jr., Trustee v. Carl Rakowski,* Adversary Proceeding No. 85–1001–B.

**7.** The question and answer in issue with respect to this allegation is as follows:

| | Question | Answer |
|---|---|---|
| 8. | Property held for another person. What property do you hold for any other person? (Give name and address of each person, and describe the property, the amount or value thereof and all writings relating thereto.) | 8. 1978—Jeep held for Helen Swift, Box 505, Star Route #4, Danbury, Wisconsin 54830, worth approx. $4,000—vehicle levied upon by Higgins & Sabuco. |

discharge. It was not until July 24, 1985, after the debtor's testimony under oath at both the creditors' meeting and Rule 2004 examination, and after the filing of the objections to discharge, that the debtor filed his amendment. The filing of the amendment was not a voluntary act. It was compelled by Mr. Hussan's realization that the trustee had uncovered that which he attempted to conceal. *Cadarette v. EFA Acceptance Corporation,* 601 F.2d 648, 652 (2d Cir.1979). Amendments made under such circumstances do not "expunge the falsity of [an] oath." *Pigott v. Cline (In re Cline),* 48 B.R. 581, 585 (Bankr.E.D. Tenn.1985).

> A ruling that a bankrupt may verify false schedules and, upon discovery, avoid the consequence of his act by amendment, is contrary to the spirit of the law which aims to relieve honest debtors only. If the law were so construed, a bankrupt runs no risk in making a fraudulent return of his property supported by a false oath, for if undiscovered, he secures the fruits of his wrongdoing, and if detected, he can still obtain his discharge by amending schedules, so as to contain the information which creditors have unearthed despite his efforts at concealment.

*In re Eaton,* 110 F. 731, 732 (N.D.N.Y. 1901); *In re Braten Apparel Corp.,* 21 B.R. 239, 262 (Bankr.S.D.N.Y.1982).

The trustee having established that Mr. Hussan's discharge should be denied pursuant to section 727(a)(4)(A), it is unnecessary to consider any of the remaining objections.

*Objections to the Discharge of Mrs. Hussan*

At the request of the court, additional testimony is to be submitted with respect to the objections to the discharge of Mrs. Hussan. Accordingly, a determination of the trustee's objections to the discharge of Mrs. Hussan will be held in abeyance pending the submission of such evidence.

An appropriate order is to be submitted for entry.