**In re Gregory Walter SCHNURR, Debtor.**

**John HUMPHRIES, Jr., Plaintiff,**

v.

**Gregory Walter SCHNURR, Defendant.**

Bankruptcy No. 88–12399FM.
Adv. No. 88–1321FM.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Oct. 31, 1989.

John W. Alvis, Alvis, Carssow, von Kreisler & Gotcher, Austin, Tex., for debtor.

William R. Allensworth, Haynes and Boone, Austin, Tex., for plaintiff.

Marsha G. Kocurek, Austin, Tex., Trustee.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

This adversary proceeding involves allegations that the Debtor violated 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(4)(A), and accordingly, should not receive a discharge in his bankruptcy case.

This Court has jurisdiction of this case pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334, as well as the standing Order of Reference existing in this District. Additionally, this adversary proceeding is a core proceeding since it involves claims made under 11 U.S.C. § 727.

## I. FACTS

### A. *The Transfer*

Gregory Walter Schnurr was a painting contractor. He had been so for twelve to thirteen years prior to the transfer about which the plaintiff, John Humphries, Jr., a creditor of the debtor, complains. The debtor had operated his business as a sole proprietorship known as Schnurr & Associates. Mr. Schnurr failed to make appropriate payments of trust fund monies to the Internal Revenue Service which had been withheld from employees' wages, and as of early 1987, owed the Internal Revenue Service approximately $246,000.00 by reason of such failure. An agreement was struck, and the debtor paid to the Internal Reve-

nue Service four monthly installments of $7,000.00 each. The debtor, however, defaulted and did not make the installment due on September 1, 1987. The IRS acted swiftly upon being notified by the debtor that such payment would not be made and levied upon on the debtor's bank account trapping approximately $19,000.00.

This levy caused certain checks of Schnurr & Associates not to be honored at the bank. These checks were in payment of employee wages and various materialmen on ongoing painting jobs upon which Schnurr & Associates was the painting subcontractor. It is evident that such levy contributed heavily to the debtor deciding to allow Schnurr & Associates to go out of business.

The debtor, however, was not deterred. Having some nine months earlier talked with counsel concerning the potential of incorporation of his painting business, he again contacted counsel and caused the incorporation of a Texas corporation by the name of Schnurr & Associates, Inc. (the "First Corporation") on September 14, 1987. The First Corporation commenced business on October 1, 1987, after having received a transfer from Schnurr & Associates of all its ongoing painting contracts. These contracts had current accounts receivable to Schnurr & Associates in the amount of $199,506.80 which were also transferred. Payables of Schnurr & Associates, on the contracts transferred in the amount of $135,540.11 were assumed by the First Corporation. The apparent net benefit to the First Corporation by reason of this transfer and assumption was $63,966.69.

No documentation of this transfer and assumption exists as the debtor chose not to document it. The only evidence of the transfer and assumption other than the testimony of the debtor is a journal entry in the amount of $63,966.69 made in the books and records of the First Corporation which set up a payable account (called "Note Payable") to Gregory Walter Schnurr, the debtor. Such entry states by way of explanation the following: "S & A,

Inc. acquired from S & A its accounts receivable and payable. The difference is payable to Greg Schnurr, as sole proprietor of S & A". Other than the testimony of the debtor, Gregory Schnurr, which is conflict on (1) whether he intended the transfer to create the resulting indebtedness to him as the books of the First Corporation show, or (2) whether he intended it to create equity in the new First Corporation, this book entry is the only evidence of the character of the consideration passing to the debtor by reason of his transfer to the First Corporation. This Court finds it is also the best evidence of what transpired. Accordingly, this Court finds that the consideration from the First Corporation to the debtor by reason of his transfer was the creation of an indebtedness to Gregory Schnurr of $69,966.69.

Subsequent to October 1, 1987, Schnurr & Associates ceased business. Clearly this is because it had no business left to conduct after the transfer. Certain assets and liabilities of Schnurr & Associates remained as personal assets and liabilities of the debtor since only the viable assets of Schnurr & Associates had been transferred to the First Corporation and only the liabilities directly attributable to the viable assets had been assumed by the First Corporation. The evidence shows that no receivables on the books of Schnurr & Associates from jobs already completed were transferred nor were liabilities associated with those jobs transferred (the evidence is silent as to the amount of both these receivables and payables). The evidence further reflects that the indebtedness to the Internal Revenue Service in excess of $200,000.00 was not assumed by the First Corporation, nor were any of the other personal liabilities of the debtor such as that owed to the Plaintiff.

So, the First Corporation, with the debtor as its sole shareholder, officer and director, began operation by taking over the viable assets of Schnurr & Associates.

Gregory Schnurr ultimately filed a Chapter 7 Petition in Bankruptcy on August 18, 1988, or within one year of his transfer of assets to the First Corporation as outlined above. Between October 1, 1987 and August 18, 1988, the First Corporation's books reflect that payments were made to Gregory Schnurr in the approximate amount of $13,000.00. These payments were booked by the First Corporation as credits against its note payable account to Gregory Schnurr.

Unfortunately, not having gained any benefit from the prior experience of its President, the First Corporation additionally neglected to pay the Internal Revenue Service certain trust funds which it had withheld from its employees in the total sum of approximately $130,000.00. Because of this, the First Corporation ceased conducting business sometime in the fourth quarter of 1988, subsequent to Gregory Schnurr filing his Chapter 7 Bankruptcy.

In December 1988, the Matson Trust was established with a $100 contribution from Schnurr's father. Subsequent thereto, the debtor contributed $4,500.00 to the Matson Trust. Beneficiaries of the Matson Trust are Gregory Schnurr's two sons, Matthew and Jason. The Matson trust caused the incorporation of Schnurr, Inc. (the "Second Corporation"). Such corporation is a painting contractor, as was the First Corporation and Schnurr & Associates. Gregory Schnurr is the president of the Second Corporation, and he and his accountant are the only directors of the Second Corporation, which was incorporated in February, 1989. Schnurr, Inc. is presently conducting business as a painting contractor.

### B. *The Failure To Disclose*

In both the initial Schedule of Assets and Liabilities and Statements of Financial Affairs filed by the debtor on September 16, 1988, and the Amended Schedule of Assets and Liabilities and Statement of Financial Affairs filed by the debtor on September 20, 1988, there is no mention or disclosure of the transfer made by the debtor to the First Corporation. Both the Original and the Amended Statements of Affairs are marked "N/A" in answer to question 14 ("transfers of property"), question 15 ("assignment of accounts and other receivables"), and question 19 (with regard to withdrawals from either an individual pro-

prietorship, or any partnership or corporation). Accordingly, they are silent not only with regard to the transfer which occurred in September 1987, but also with regard to the money the debtor had withdrawn from the First Corporation in the previous year which had been booked by the First Corporation as payment on the debtor's "note payable" account. Further, both the Original and Amended Schedules at Schedule B–2(p) ("Other Liquidated Debts Owing the Debtor"), are answered "N/A". The debtor failed to schedule the debt owed to him by the First Corporation. However, in his answer to the question on Schedule B–2(t) the debtor reflects that he owns stock in Schnurr & Associates, Inc. with a value of $100.00, although he offers no explanation of the extent of his role with Schnurr & Associates, Inc., the nature of the business of Schnurr & Associates, Inc., or its history of transactions with the debtor.

The debtor has chosen not to disclose either the transfer of assets to the First Corporation, the existence of an indebtedness from the First Corporation to him by reason of the transfer, or the existence of payments on that debt to him during the twelve month period prior to filing this case even though that transfer was the vehicle he chose to use in order to continue his paint contracting business after the IRS levy.

### C. *Failure to Document*

As noted above, the debtor chose not to document the transfer transaction. Sufficient records do, however, exist to reflect the substance of the transaction.

### II. *Conclusions*

### A. *Failure to Document*

■ Although the Court does find the debtor's choice not to document the transfer of assets not only significant but convenient (in that now virtually all that we are left with, other than the circumstances surrounding the transaction at the time it occurred, is the debtor's recollection of what he intended to occur), that fact alone is not sufficient to bar the debtor's discharge under 11 U.S.C. § 727(a)(3), as sufficient records exist to reflect the substance of the transaction and no evidence was presented which would indicate a general failure on the part of the debtor to keep books and records of his business operations. The Court, therefore, rules in favor of the Defendant on this issue.

### B. *Failure to Disclose*

11 U.S.C. § 727(a)(4)(A) provides in relevant part that "(a) The Court shall grant the debtor a discharge, unless—the debtor knowingly and fraudulently, in or connection with the case—(A) made a false oath or account;".

The purpose of this code section is to insure that the debtor willingly discloses all assets which he may own which may have some value, that is, to provide the trustee and creditors with reliable information concerning the debtor's assets, liabilities, and statement of financial affairs. *Interfirst Bank Greenville v. Morris (In re Morris)*, 58 B.R. 422 (Bankr.N.D.Tex.1986); *Giel v. Brooks (In re Brooks)*, 58 B.R. 462 (Bankr. W.D.Pa.1986); *Rosenbaum v. Kilson (In re Kilson)*, 83 B.R. 198 (Bankr.D.Conn. 1988); *Bologna v. Cutignola (In re Cutignola)*, 87 B.R. 702 (Bankr.M.D.Fla.1988); *Allard v. Hussan (In re Hussan)*, 56 B.R. 288 (Bankr.E.D.Mich.1985). Although the cases vary in degree, generally the failure by a debtor to disclose insignificant, trivial, or essentially worthless assets is not something which, in and of itself, will require a discharge to be barred as such non-disclosure is not deemed to be material. *Pierson v. Sowell (In re Sowell)*, 92 B.R. 944 (Bankr.M.D.Fla.1988); *Crews v. Topping (In re Topping)*, 84 B.R. 840 (Bankr.M.D. Fla.1988). Conversely, failure by a debtor to disclose information which bears a relationship to the debtor's business relations or estate, or concerns discovery of assets, business dealings or existence or disposition of his property is clearly material. *Poolquip v. Hubbard (In re Hubbard)*, 96 B.R. 739 (Bankr.W.D.Tex.1989); *WTHW Investment Builders v. Dias (In re Dias)*, 95 B.R. 419 (Bankr.N.D.Tex.1988); *Chalik v. Morefield, Jr. (In re Chalik)*, 748 F.2d 616 (11th Cir.1984); *Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir.1987); *Williamson v. Fireman's Fund Ins. Co. (In re*

*Williamson)*, 828 F.2d 249 (4th Cir.1987); *Farmer's Cooperative v. Strunk (In re Strunk)*, 671 F.2d 391 (10th Cir.1982); *In re Mascolo*, 505 F.2d 274 (1st Cir.1974); *American State Bank v. Montgomery (In re Montgomery)*, 86 B.R. 948 (Bankr.N.D. Ind.1988).

■ The evidence shows that the trustee participated in certain discovery in December of 1988 and at that time learned of the totality of the transactions which had occurred and of the fact of the existence of the indebtedness from the First Corporation to the debtor. However, by that time, the First Corporation was defunct. It was not, however, out of business as of August 18, 1988, the date of the institution of Mr. Schnurr's bankruptcy proceeding. Had the existence of the indebtedness from the First Corporation to Mr. Schnurr been properly scheduled, the Trustee would have at least had a chance to take some action in order to obtain a recovery from that asset which was then in the approximate amount of $50,000.00. The point is that we will never know because Mr. Schnurr failed to properly schedule the existence of either the indebtedness from the First Corporation or the transfer of assets to it. The evidence did not show conclusively that the creditors of Mr. Schnurr would have been able to recover any money or other assets had the transfer and the resulting indebtedness been properly scheduled. That, however, is not fatal to plaintiff's case. Clearly Mr. Schnurr's failure to disclose the existence of the significant transfer of assets that occurred during the previous year and the indebtedness owed to him resulting therefrom bore a relationship to his business relations and estate and directly concerned discovery of assets, business dealings and the existence or disposition of his property. Therefore, such failure is both significant and material. Further, it is clearly the law that the concealed information does not have to lead to available assets to creditors. *Chalik*, supra; *La-Vangie v. Mazzola (In re Mazzola)*, 4 B.R. 179 (Bankr.D.Mass.1980), remanded 23 B.R. 263; *In re Gugliada*, 20 B.R. 524 (Bankr.S.D.N.Y.1982).

Having determined that the omissions from Mr. Schnurr's Schedules and Statements of Affairs, both original and as amended, were material, the Court must now determine whether such was a knowing and fraudulent act. This means that there must have been an intentional untruth with relation to a matter material to the bankruptcy. *Federal Land Bank v. Ellingson (In re Ellingson)*, 63 B.R. 271 (Bankr.N.D.Iowa 1986).

The debtor claims in his testimony that he did not understand that the questions on the Statements of Affairs required the disclosure of the transfer. This Court finds such statement not credible. Mr. Schnurr came within three (3) hours of getting a business degree in accounting. He is certainly not naive, nor is he inexperienced in matters of business. Further, questions 14 (transfers of properties) and 15 (assignment of accounts or other receivables) on the Statements and Schedules, which were answered by the debtor as "N/A", are very clear and unambiguous, easily interpreted by someone of Mr. Schnurr's educational and business background. Likewise, Schedule B(2)–P requiring disclosure of "Other Liquidated Debts Owing to the Debtor" could not be clearer.

There simply does not exist any plausible explanation for why the transfer and the resulting indebtedness to the debtor were not reflected anywhere on the Schedules or Statements of Affairs other than that the debtor intentionally chose not to disclose their existence.

It is clear that the debtor's intent can be inferred from the facts and circumstances surrounding the debtor's actions. *Pigott v. Cline (In re Cline)*, 48 B.R. 581 (Bankr.E. D.Tenn.1985). 4 *Collier on Bankruptcy* paragraph 727.04[1] (15th ed. 1985). Here the debtor was in total and singular control of all the pertinent events. For example, he could have had documents drawn at the time of the transfer to reflect what was being transferred and what the consideration of that transfer was. He chose not to do so. He could have timely disclosed their existence to his creditors, but he chose not to do so.

The facts and circumstances surrounding failure of the debtor to schedule such a material and significant asset and the transfer which created it leads this Court to the inescapable conclusion that such failure was a deliberate act performed by the debtor with the intent of keeping the existence of the transfer and the resulting debt from being known. He was successful in his efforts, in that the evidence showed the Trustee did not learn of these matters until after Schnurr & Associates was defunct.

The totality of the debtor's actions reflect heavily upon his true intentions throughout this time period. After all it was the debtor, being in total control, who chose not to document the transaction, not to disclose the transaction to his creditors, and not to pay the IRS. Further, it was the debtor who decided to make the transfer so he would not have his income stream interrupted any more by the IRS, who decided what to transfer and what not to transfer, who decided that neither Schnurr & Associates nor the First Corporation would pay its taxes, who decided to allow both Schnurr & Associates and the First Corporation to die, who decided the timing of all of these events, and who undoubtedly was the moving force behind the creation of the Matson Trust and the Second Corporation which appear to be just one more vehicle through which the debtor can maintain an income stream free from his creditors. The pattern of this debtor's behavior speaks volumes more than he was able to from the witness stand as he was not able to advance any plausible reason to explain why he failed to disclose the existence of either the transfer or the resulting indebtedness. This is especially true since the transfer had to have been the single most significant event to the debtor in the previous year. After all, it was that transfer that allowed him to avoid the clutches of the IRS, to continue his business operations as usual, and to draw a $45,000.00 salary for the next year.

The failure to disclose under the circumstances of this case constitutes the knowingly and fraudulently making of a false oath in connection with the case. Accordingly, the debtor's discharge must be barred pursuant to 11 U.S.C. § 727(a)(4)(A).

## C. *The Transfer*

█ The final ground alleged by Plaintiff for denying this debtor his discharge is that the transfer itself violates of 11 U.S.C. § 727(a)(2)(A). Specifically, the statute states in relevant part that, "(a) The Court shall grant the debtor a discharge, unless— (2) the debtor with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this Title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition;".

Again, the debtor's testimony was self-serving and not credible under the circumstances in which the transfer took place. The Court finds the primary purpose of the transfer was to allow the business of Schnurr & Associates to continue to operate sheltered by a new entity, Schnurr & Associates, Inc., free from the non-viable assets and oppressive liabilities of the old, and with only the viable ongoing assets and the lesser amount of liabilities that accompanied them. Mr. Schnurr's clear purpose of staying in business was to insulate the income stream generated from the viable assets from the creditors of Schnurr & Associates and, specifically, the Internal Revenue Service, not to protect trust funds for suppliers and materialmen as contended by the debtor. If the debtor was truly concerned about trust funds going to their proper beneficiary, he would have done more to see that the Internal Revenue Service was paid their trust funds, both from Schnurr & Associates and the First Corporation. Also, if he was truly concerned about his suppliers, they could have been protected in a number of ways short of incorporation of a new business entity and transfer of all of the viable assets to it. For example, the general contractors of the Schnurr & Associates job could have been requested to make payments into a trust fund set up specifically for the materialmen in order to keep the jobs lien-free. The profit from these jobs then could have been used to pay the other creditors of Schnurr & Associates. Instead, the profit

was used to fund the operations of Schnurr & Associates, Inc., which in turn paid Mr. Schnurr his $45,000.00 annual salary.

It was the debtor who chose to take the dramatic step he took, and it is he who must bear the consequences. He wanted to insulate the anticipated present and future income stream of his paint contracting business from creditors and at the same time create a salary for himself from that entity so he could be assured of a steady living. He accomplished his goals by changing (through the transfer) his ownership of certain income producing assets to 100% ownership of a corporation with nominal book value, by creating an obligation from that Corporation back to himself in consideration for the transfer (which obligation by design was not represented by a promissory note, had no terms of payment, had no rate of interest to be charged, and was solely dependent upon the discretion of the debtor himself as to when and if payments on the indebtedness would be made), and by establishing a salary for himself out of what would have otherwise been "profits" in the discarded sole proprietorship, Schnurr & Associates. Additionally, no records of the transaction such as would normally exist, i.e., bills of sale, promissory notes, etc., were created. The intention of the debtor in these types of cases must generally be determined by an analysis of the facts and circumstances surrounding the transfer, almost no debtor who has acted with a fraudulent intent will admit to it on the witness stand. *J–W Operating Co. v. Rothrock (In re Rothrock)*, 96 B.R. 666 (Bankr.N.D.Tex.1988); *First Commercial Bank v. Locke (In re Locke)*, 50 B.R. 443 (Bankr.E.D.Ark.1985); *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751 (9th Cir.1985); *Farmers Co–Operative Asso. v. Strunk (In re Strunk)*, 671 F.2d 391 (10th Cir.1982).

Taking all of the circumstances surrounding the transfer into consideration, this Court concludes that the defendant's intent was clearly to put these assets beyond the reach of creditors; and by doing so, he clearly hindered and delayed his creditors existing at that time, the most notable one being the Internal Revenue Service. 11 U.S.C. § 727(a)(2)(A) is written in the disjunctive. That means all the plaintiff has to prove is that the debtor hindered his creditors, he delayed his creditors, *or* he defrauded his creditors. *Federal Deposit Insurance Corporation v. Morris (In re Morris)*, 51 B.R. 462 (Bankr.E.D. Tenn.1985); *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339 (9th Cir.1986). See the following cases for a discussion of 11 U.S.C. § 727(a)(2)(A): *Hubbard*, supra; *Dias*, supra; *Devers*, supra; *Adeeb*, supra; *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574 (2nd Cir.1983); *Redmond v. Tuttle (In re Tuttle)*, 15 B.R. 14 (Bankr.D. Kan.1981).

Although not necessary to the Court's ruling with regard to the necessity to bar the debtor's discharge because he has clearly hindered and delayed his creditors by reason of the transfer complained of, this Court also concludes that the debtor defrauded his creditors then existing. This is clear from the surrounding facts and circumstances which, as analyzed above, reflect the true intent of the debtor.

Accordingly, the debtor's discharge must be barred pursuant to 11 U.S.C. § 727(a)(2)(A).

This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 and an Order will be entered pursuant hereto.