In re Dale N. **HAVERLAND**, Debtor.

Robert L. **SERGENT**, Jessie Sergent, Plaintiffs,

v.

Dale N. **HAVERLAND**, Defendant.

Related Bankruptcy No. 91–13518–H7. Adv. No. 92–90154–H7.

United States Bankruptcy Court, S.D. California.

Feb. 10, 1993.

Richard G. Bain, El Cajon, CA, for debtor.

Hilary A. Dawson, San Diego, CA, for plaintiffs.

Harold Taxel, La Jolla, CA, trustee.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This action involves a complaint objecting to the discharge of Debtor Dale N. Haverland pursuant to 11 U.S.C. § 727(a)(2)(A) and § 727(a)(4)(A) of the Bankruptcy Code. This court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding in which the court is authorized to hear and determine all matters relating to this case. 28 U.S.C. § 157(b)(2)(J).

## FACTS

In March of 1989 Dale Haverland entered into a contract with Robert and Jessie Sergent ("plaintiffs") to remodel their home. The plaintiffs refused to pay for the work and Haverland instituted suit against them for breach of contract. The plaintiffs filed a cross-complaint for fraud. The case was tried and a judgment of $48,-684.00 was entered on June 22, 1991 in favor of the plaintiffs on their cross-complaint. On November 27, 1991, Haverland filed a Voluntary Chapter 7 petition listing the $48,684.00 debt. The debtor acknowledged "under penalty of perjury" that he had read the schedules and the answers contained in the statement of financial affairs and that they were "true and correct" to the best of his knowledge, information and belief. On March 3, 1992 the plaintiffs filed a complaint pursuant to § 727(a)(2)(A) and § 727(a)(4)(A) objecting to the discharge of the debtor.

## DISCUSSION

The plaintiffs contend that the debtor's discharge should be denied pursuant to § 727(a)(4)(A) because the debtor knowingly failed to schedule a joint interest he held in two vacant lots and a mobile home in Arizona with a Kaaren Reed, and failed to list the transfer of an interest he had in a bank account. Additionally, the plaintiffs contend that the debtor's discharge must be denied pursuant to § 727(a)(2)(A) because he transferred the interest in the bank account within one year prior to filing his bankruptcy petition, and with the "intent to hinder, delay and defraud" creditors.

The Court will first address the § 727(a)(4)(A) objection:

Section 727(a)(4)(A) provides that:

"(a) The court shall grant the debtor a discharge, unless

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account...."

A fundamental purpose of § 727(a)(4)(A) "is to ensure that dependable information is supplied for those interested in the administration of the bankruptcy estate on which they can rely without the need for the trustee or other interested parties to dig out the true facts in examinations or investigations." *Guardian Industrial Products, Inc. v. Diodati (In re Diodati),* 9 B.R. 804, 807 (Bankr.D.Mass.1981). To prevail in a § 727(a)(4)(A) action, the creditor must establish that the debtor knowingly made a false statement under oath with respect to a matter material to the administration of his estate. *Patton v.*

*Hooper (In re Hooper)*, 39 B.R. 324, 329, 11 Bankr.Ct.Dec. (CRR) 1311 (Bankr. N.D.Ohio 1984); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 12 Bankr.Ct.Dec. (CRR) 855 (11th Cir.1984); *Pigott v. Cline (In re Cline)*, 48 B.R. 581, 584 (Bankr. E.D.Tenn.1985). "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik*, 748 F.2d at 618. "Materiality of a false oath does not depend upon whether the falsehood is detrimental to creditors." *Matter of Hussan*, 56 B.R. 288, 290 (Bankr. E.D.Mich.1985); *In re Chalik*, 748 F.2d at 618. It is with this background that the plaintiffs' objection will be addressed.

## FALSE OATH WITH RESPECT TO THE ARIZONA PROPERTY

■ The debtor's schedules do not disclose that he had an ownership interest with Kaaren Reed in 2 lots and a mobile home situated in Bullhead City, Arizona. At the trial the debtor testified that he did not list the Arizona property in his schedules because "in his mind" he did not own the property. This explanation, to put it mildly, is not worthy of belief.[1]

During the contract negotiations the debtor informed the plaintiffs that he owned property in Bullhead City. Understandably angered by the post-judgment bankruptcy filing, and apparently convinced that the debtor's assertion that he owned property was true, the plaintiffs traveled to Arizona to attempt to locate evidence substantiating the debtor's claim. Their trip was successful. They obtained a tax assessor's printout from the Mojave County Recorder's office which revealed that the debtor held a joint interest with Kaaren Reed in the lots and mobile home. This discovery prompted further investigation which uncovered the following facts: (1) The debtor met Kaaren Reed in 1986 and had a continuing relationship with her since that time; (2) In March of 1987 they visited Arizona and inspected the lots and mobile home in Bullhead City; (3) Kaaren Reed made a $5,000.00 down payment on the properties; (4) The debtor and Kaaren Reed both applied for a $29,500.00 loan from Anchor Savings Bank to finance the balance of the $34,500.00 purchase price; (5) The debtor and Kaaren Reed both executed the promissory note and deed of trust to secure the repayment of the loan; (6) The property was conveyed by a joint tenancy deed to the debtor and Kaaren Reed; (7) The mobile home is titled and registered in the names of both the debtor and Kaaren Reed.

The record clearly establishes that the debtor had a joint interest in the two lots and mobile home in Arizona, that he failed to disclose this interest, that the false statement was made with respect to a matter material to the administration of the estate, and that the false statement was made willfully in an attempt to conceal this asset from the trustee and creditors.

Counsel for the debtor now contends that even if the Court were to find that the debtor knowingly failed to schedule the Arizona property, the plaintiffs' § 727(a)(4)(A) action must be dismissed because the property does not have any value to the estate.[2] This argument has no merit.

■ A debtor has a duty to complete the schedules truthfully, disclosing whatever ownership interest he holds in property,

---

1. The testimony of Kaaren Reed is equally unbelievable. Asked to explain why the debtor's name appeared on the deed of trust if he did not have an interest in the property Miss Reed, a detective in the San Diego Police Department, blithely stated that the debtor's name appeared on the deed because "he was there."

2. There is nothing in the record that would enable the Court to determine whether the Arizona property had or did not have value to the

estate. The debtor, to establish that the property was worthless to the estate, relies upon a statement in Exhibit 12 that lists the assessed value of the property for tax purposes as $25,-657.00. However, there is no evidence to establish what relationship, if any, the assessed value of property bears to the market value of the property. Additionally, there is no evidence that the assessed value of the property is less than the amount due on the note.

and whatever property he transferred prior to the filing of the petition in bankruptcy. Compliance with this duty is essential to the expeditious and successful administration of a bankruptcy case. *In re Chalik,* 748 F.2d at 618; *Diorio v. Kreisler–Borg Construction Co.,* 407 F.2d 1330, 1331 (2d Cir.1969). A trustee or creditor should not be required to make a costly investigation, as in fact the plaintiffs were forced to do, to uncover the existence of property which the debtor knowingly fails to disclose. *In re Tully,* 818 F.2d 106, 111 (1st Cir.1987). The determination of whether property has value for the estate is not for the debtor to make. *Matter of Hussan,* 56 B.R. at 292. Therefore, the debtor may not escape a § 727(a)(4)(A) objection to discharge simply by asserting that the omitted property was worthless. *In re Sapru,* 123 B.R. 948 (Bankr.E.D.N.Y.1990).[3]

■ "[A] discharge is a privilege granted the honest debtor and not a right accorded to all bankrupts." *In re Tabibian,* 289 F.2d 793, 795 (2d Cir.1961). This privilege is granted only on condition that the debtor fully and truthfully discloses all his assets, liabilities and financial transactions. The fact that undisclosed property has no value does not provide a safe harbor for a debtor who engages in a pattern of calculated deception and displays a "cavalier and casual attitude toward the importance of an accurate, complete and honest answer to material disclosures required as to the nature, value, extent and disposal of his assets." *In re Bailey,* 53 B.R. 732, 736 (Bankr.W.D.Ky.1987). In summary, a debtor may not accept the benefits conferred by the code and reject its burdens.

The plaintiffs have clearly established that the debtor's discharge should be denied pursuant to § 727(a)(4)(A).

### FALSE OATH WITH RESPECT TO TRANSFER OF INTEREST IN BANK ACCOUNT

■ Kaaren Reed had a checking account at the San Diego Municipal Credit Union into which the debtor deposited checks since 1987. In 1989 the debtor's name was formally added to the account. This addition created a joint account with the debtor and Kaaren Reed having a shared interest in the account "in proportion to the net contributions" that each made to the account. California Probate Code § 5301(a). In June of 1991, within two weeks of the entry of the $48,684.00 judgment against him, and approximately five months prior to the filing of the bankruptcy petition, the debtor removed his name from the account. The debtor by removing his name from the account transferred his interest in the account to Kaaren Reed. The account balance at that time was $3,829.44.

Paragraph 11 of the Statement of Financial Affairs requires a debtor to:

"List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were *closed, sold, or otherwise transferred* within **one year** immediately preceding the commencement of this case." [emphasis added]

■ In response to question 11 of the Statement of Financial Affairs the debtor failed to disclose that he removed his name from the joint bank account. The debtor testified that he read question 11 to mean that he was required to list only "closed" accounts and that he did not list the transfer of his interest in the joint account because the account was not "closed." This explanation is disingenuous and frivolous. Question 11 does not require the disclosure only of closed accounts. Question 11, in clear and unequivocal language, requires the debtor to list all accounts held in his name which *"were closed, sold or otherwise transferred."* [emphasis added]. The court finds that the debtor understood question 11 and knew that he was required

---

**3.** The debtor relies on *In re Somerville,* 73 B.R. 826, 837 (Bankr.E.D.Pa.1987) for his contention that because the property does not have value to the estate, the 727(a)(4)(A) action must be dismissed. This reliance is misplaced. *Somerville* holds that the negligible value of property is a factor negating fraudulent intent in a 727(a)(2)(A) action but the lack of value of omitted property does not defeat a 727(a)(4)(A) action. *In re Somerville,* 73 B.R. at 836.

to disclose the transfer of his interest in the joint account he held with Kaaren Reed. The court further finds that the debtor knowingly failed to list the transfer in an attempt to conceal it from the trustee and creditors. For this additional reason the debtor's discharge is denied pursuant to § 727(a)(4)(A).

## TRANSFER OF INTEREST IN BANK ACCOUNT

The plaintiffs also contend that the debtor's discharge must be denied pursuant to § 727(a)(2)(A) because the debtor transferred his interest in the joint bank account within a year before the filing of his bankruptcy petition, and with the intent to hinder, delay or defraud creditors of the estate. Section 727(a)(2)(A) provides that:

(a) The court shall grant the debtor a discharge unless—

(2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition ...

The debtor removed his name from the joint account in June of 1991, approximately five months before the petition in bankruptcy was filed and when the account had a balance of $3,829.44. By virtue of the removal of his name the debtor transferred his property interest in the account funds to Kaaren Reed. Accordingly, the plaintiffs have established that the debtor transferred property within one year before the filing of the bankruptcy petition.

■ However, to sustain an objection to discharge pursuant to § 727(a)(2)(A) the trustee or creditor must establish not only that the debtor transferred property within a year prior to the filing of the bankruptcy petition but also that he made the transfer with the "intent to hinder, delay or defraud" the estate. Intent is a question of fact. *Gabellini v. Rega*, 724 F.2d 579, 581 (7th Cir.1984); *Carini v. Matera*, 592 F.2d 378, 380 (7th Cir.1979). Rarely will a person who is guilty of fraudulent conduct admit his guilt. Thus, "[d]irect proof of fraudulent intent is rarely available." *In re Schlickmann*, 6 B.R. 281, 282 (Bankr. D.Mass.1980). Absent direct proof this intent may be inferred from the existence of certain indicia or badges fraud. *U.S. v. Fernon*, 640 F.2d 609, 613 (5th Cir.1981). Illustrative of such badges of fraud are: "(1) Lack of consideration for the transfer; (2) close family relationship between the transferor and the transferee; (3) pending or threatened litigation against the transferor; and (4) insolvency or substantial indebtedness of the transferor." *U.S. v. Fernon*, 640 F.2d at 613; *In re Warner*, 87 B.R. 199, 203 (Bankr.M.D.Fla.1988). *See also In re Steele*, 79 B.R. 503, 504 (Bankr. M.D.Fla.1987); *In re Porter*, 37 B.R. 56, 60–61 (Bankr.E.D.Va.1984).

■ All of the recognized indicia of fraud are present here. The debtor transferred his interest in the account to a woman whom he met in 1986 and with whom he had been living since March of 1987. The debtor did not receive any consideration for the transfer. The transfer was made within two weeks of the plaintiffs' judgment, a judgment that rendered him hopelessly insolvent. After the debtor deleted his name from the account he continued making deposits into the account and the account continued to be used to pay the expenses of both the debtor and Kaaren Reed. For all practical purposes the account remained a joint account. The conclusion is inescapable that the debtor transferred his interest in the account to Kaaren Reed for the sole purpose of preventing the plaintiffs from reaching the account to satisfy their judgment. This conclusion is buttressed by the fact that the debtor's name was added back to the account after the filing of the petition in bankruptcy.

Accordingly, the debtor's discharge must be denied for this additional reason.

This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Proce-

dure 7052. An appropriate order to be submitted by counsel for plaintiffs within ten (10) days from the date of entry of this Opinion.