**In re James William CLINE Wilma Jean Cline, Debtors.**

**Joseph C. PIGOTT, Alice H. Pigott and George M. Johnson, Plaintiffs,**

**v.**

**James William CLINE and Wilma Jean Cline, Defendants.**

Bankruptcy No. 3–84–00252.
Adv. No. 3–84–0199.

United States Bankruptcy Court,
E.D. Tennessee.

April 19, 1985.

---

Daniel F. McGehee, Knoxville, Tenn., for plaintiffs.

James M. Crain, Knoxville, Tenn., for defendants.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether discharge should be denied on the basis of either a false oath or the presentation of a false claim [1] in connection with the debtors' case. 11 U.S.C.A. § 727(a)(4)(A) and (B) (1979).

I

Plaintiffs are judgment-creditors of the debtors, James Cline and Wilma Cline, who are husband and wife. Plaintiffs, the debtors, and a few other individuals were investors in Stiles Janitorial & Maid Service, Inc. (Stiles), an unsuccessful World's Fair venture. In May 1982 the debtors and some of the other investors agreed to indemnify plaintiffs with respect to a $50,000 note held by Bank of Maryville. Shortly thereafter it became evident that Stiles was unprofitable and could not continue doing business. During a meeting of the investors in June 1982, James Cline stated Stiles was "going to go bankrupt." He also encouraged the investors to transfer their assets beyond the reach of creditors.

After plaintiffs paid Bank of Maryville they filed suit against the debtors and certain other investors to enforce the indemnification agreement. At the conclusion of the trial on February 17, 1984, the chancellor announced that plaintiffs were entitled to judgment in the amount of $50,000, plus interest, against the debtors and the other investor-indemnitors. Also on February 17, 1984, after the chancellor's ruling, the debtors filed their chapter 7 bankruptcy petition.

On May 4, 1982, nearly two years prior to debtors' bankruptcy petition, James Cline and his father-in-law, Ollie Warren, borrowed $20,000 from Union National Bank in Barbourville, Kentucky. The loan is evidenced by a note, dated May 4, 1982, providing for interest at fourteen and one-half (14.5) percent. James Cline received the proceeds of the bank loan; approximately $10,000 of the loan proceeds were invested in the Stiles venture. The $20,000 note was fully secured by certificates of deposit owned and pledged by Ollie Warren.

---

1. Although plaintiffs in their pleadings did not assert presentation of a false claim as a basis for denial of discharge, the issue was raised at trial. Issues not raised in the pleadings but tried by express or implied consent of the parties are treated as if they had been raised in the pleadings. Bankruptcy Rule 7015. Amendment of the pleadings to conform to the evidence will not prejudice the rights of James Cline. See

*Comprehensive Accounting Corp. v. Morgan,* 41 B.R. 259 (Bankr.E.D.Tenn.1984) (amendment permissible where proposed, amended allegations arise out of same conduct or occurrences forming basis of original allegations). Plaintiffs' allegations of false oath and the false claim present a "common core of operative facts." 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1497 at 495 (1971).

According to Warren the debtors approached him about borrowing $20,000. Warren had previously loaned money to his daughter and son-in-law. The pledge of his certificates of deposit enabled James Cline to procure the $20,000 loan from Union National Bank.

When the note was due on May 4, 1983, James Cline made an $8,000 payment. He and Warren also executed a renewal note for $14,900. Upon maturity of the renewal note on November 4, 1983, James Cline borrowed approximately $4,400 from Warren to make a payment. He and Warren executed a second renewal note in the principal amount of $10,900. This second renewal note matured postpetition, on May 11, 1984. On that date, Warren executed, singularly, his own note in satisfaction of the second renewal note. Warren paid his $10,900 note in full on November 5, 1984.

Although it appears no promissory note was ever made to Warren by James Cline,[2] on June 15, 1982, the debtors executed a third deed of trust against their marital residence in favor of Warren.[3] Though not acknowledged, the purported deed of trust was recorded on July 14, 1982. It recites in part: "This is given as security in consideration of a personal loan of $20,000.[00] on *May 4, 1982* at 14.5% Interest and a $6000.[00] personal loan from past date." Apparently this deed of trust was never delivered to Warren. On February 15, 1984, only two days prior to their bankruptcy petition, debtors executed a correction deed of trust containing an acknowledgment. The correction deed of trust recites in part:

> Whereas James W. Cline is/are truly indebted to Ollie Warren ... in the sum of Twenty-Six Thousand and 00/100 Dollars, $26,000.00 evidenced by one promissory note ..... dated and due as follows: Dated May 4, 1982, in the amount of $20,000.00 bearing interest at 14.5% per annum, payable on demand, and also a prior loan of $6,000.00, without interest, payable on demand.

The date, amount, and interest rate of the described note correspond to the note from James Cline and Warren to Union National Bank. The correction deed of trust was recorded on February 16, 1984.

II

The debtors filed their statement of financial affairs and schedules on March 15, 1984. They scheduled an unsecured claim for $12,000 owing by James Cline to Union National Bank and a $29,000 secured claim owing to Ollie Warren. As of the petition date James Cline owed $10,900 plus interest to Union National Bank, but the debtors' indebtedness to Ollie Warren was substantially less than $29,000. Warren's noncontingent claim did not exceed $5,400.[4] Of course, Warren also held a contingent claim against James Cline equal to the unpaid debt ($10,900 principal) on their note to Union National Bank. Yet, even including this contingent claim the maximum amount of Warren's claim was approximately $16,300 principal, plus interest.

The debtors' residence, their principal asset, has a scheduled market value of $61,000. Three creditors' claims reportedly are secured by an interest in their residence. According to their original schedules these claims are:

| Creditor | Amount of Claim |
|---|---|
| Kentucky Mortgage Co. | $33,237.27 |
| Commercial Credit Corp. | $23,861.67 |
| Ollie Warren | $29,000.00 |

---

**2.** Ollie Warren is seventy-three (73) years old; he concedes that he is forgetful. Although Warren testified that the debtors signed a promissory note in his favor, no such note was introduced at trial.

**3.** The debtor's deed of trust was executed at or about the time James Cline encouraged other Stiles investors to place their assets beyond the reach of creditors.

**4.** This figure represents the sum of $4,400, advanced by Warren to James Cline in November 1983 to enable Cline to make a payment against their $20,000 note to Union National Bank, plus a pre-existing debt of $1,000. (According to debtors' motion to amend their schedule, filed June 20, 1984, they owed $1,000 to Ollie Warren prior to execution of their deed of trust to him.)

The Commercial Credit Corp. claim was only $14,510.92 when debtors' petition was filed. Hence, both the Commercial Credit and the Warren claim were significantly overstated. No explanation has been proffered for overstating the Commercial Credit claim. With respect to the Warren claim, James Cline's only explanation is that he felt he owed $29,000 to Warren.

On March 26, 1984, a proof of claim in the amount of $26,000 was filed in Warren's name. The only attachment to the claim, filed as a secured claim, is the debtors' correction deed of trust. Though the proof of claim is signed "Ollie Warren," James Cline admits he signed his father-in-law's name and submitted the claim. He did so without authorization from Warren. Further, no explanation whatsoever has been offered by James Cline to account for his filing the false claim.

In reliance upon advice of their attorney, debtors did not disclose in the statement of financial affairs their execution of the correction deed of trust. Their omission, however, is material because the original, unacknowledged deed of trust is void as to creditors,[5] and the correction deed of trust was recorded during the preference period.

The debtors also initially failed to schedule claims totaling more than $1,100 against Southern Industrial Banking Corporation (SIBC), James Cline's former employer. On April 24, 1984, debtors amended their statement of affairs and schedules to include both the claims against SIBC and an SIBC preference claim against them for $8,503.25.

On June 20, 1984, one month after plaintiffs' complaint was filed objecting to their discharge, debtors further amended their schedules. They reduced the amount of the scheduled claim of Ollie Warren from $29,000 to $16,889.50. Also, they deleted the claim of Union National Bank, which had accepted Ollie Warren's $10,900 note, dated May 11, 1984, in exchange for the $10,900 renewal note, dated November 11, 1983, co-signed by James Cline and Warren.

Apparently unaware of the overstated claims of Commercial Credit and Warren, as well as the preference cause of action against Warren, the debtors' trustee filed a no-asset report on June 29, 1984.

### III

Bankruptcy Code § 727 enacts in material part:

(a) The court shall grant the debtor a discharge, unless—

.     .     .     .     .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim....

11 U.S.C.A. § 727(a)(4) (1979).

A false statement in a debtor's schedules or statement of financial affairs may be a false oath barring discharge. Although the false statement must relate to a material matter, materiality does not depend upon whether the falsehood is detrimental to creditors. *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir.1974); *Guardian Indus. Products, Inc. v. Diodati,* 9 B.R. 804, 808 (Bankr.D.Mass.1981). The false statement must be knowingly and fraudulently made in connection with the bankruptcy case. It is sufficient if the debtor knows the truth and nonetheless wilfully and intentionally swears to what is false. *In re Kaufhold,* 256 F.2d 181, 185 (3rd Cir.1958). Proof of intent to defraud may be inferred from the facts. 4 *Collier on Bankruptcy* ¶ 727.04[1] (15th ed.1985).

The debtors' statement of financial affairs and schedules are undeniably false. While omission of their execution of the correction deed of trust on advice of counsel is understandable, no credible explanation is proffered for overstating the

---

5. See Tenn.Code Ann. § 66–5–106 and § 66–26–103 (1982). See also *In re Airport-81 Nursing Care, Inc.,* 29 B.R. 501 (Bankr.E.D.Tenn.1983) (improperly acknowledged deed of trust invalid vis-a-vis grantor's trustee in bankruptcy).

scheduled, secured claims of Commercial Credit and Ollie Warren. The overstatement of these two claims is a material falsity. It creates a mistaken belief that the liens against the debtors' residence exceed its fair market value by $25,000. In fact, however, if their bankruptcy trustee may defeat Warren's secured claim there is an equity of $10,000 or more in debtors' residence.[6] Amendment does not expunge the falsity of an oath. *Mazer v. United States*, 298 F.2d 579, 582 (7th Cir.1962). Hence, debtors may not rely on their amendment reducing Warren's scheduled claim by approximately $12,000.[7]

Although the record does not support a conclusion that Wilma Cline knowingly and fraudulently made a false oath in connection with the debtors' bankruptcy case, plaintiffs have established a prima facie case under Code § 727(a)(4)(A) against James Cline. Though his formal education did not extend beyond high school, James Cline is experienced in financial matters. He has been employed with lending institutions and was a collection manager for one when the debtors' case was commenced. He offered no explanation whatsoever for overstating the Commercial Credit claim. Further, his explanation that he felt he owed Warren $29,000 in February 1984 is not credible.

Also, James Cline could not reasonably have believed he was indebted to Ollie Warren in the amount of $26,000 when he filed a proof of claim on Warren's behalf, but without Warren's authorization, on March 26, 1984. James Cline knew the principal debt to Union National Bank on his note co-signed by Warren was only $10,900. His other indebtedness to Warren as of the petition debt did not exceed $5,400.[8] No credible excuse, not even carelessness, is offered to explain filing the false claim.

The court concludes that Wilma Cline's discharge will be granted, but James Cline is barred from discharge pursuant to 11 U.S.C.A. § 727(a)(4)(A) and (B) (1979).

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

**6.** At trial James Cline testified that the value of debtors' marital residence is $57,000 to $58,000, less than the scheduled value of $61,000.

**7.** No amendment has been filed to reflect that the Commercial Credit claim secured by a deed of trust against their residence is only $14,510.92, not $23,861.67 as scheduled by the debtors.

**8.** See note 4, *supra*, and accompanying text. Also, on January 15, 1985, Ollie Warren filed a proof of claim for $17,300. This amount apparently consists of $11,484.71 paid to Union National Bank, plus $4,400 loaned to James Cline in November 1983, plus any remaining indebtedness.