IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30779
Summary Calendar
_____

IN THE MATTER OF GREGORY M POROBIL,

Debtor.

--------------------------

GREGORY M POROBIL,

Appellant,

v.

SANDRA A AUTRY,

Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(98-CV-288-R)
_____

June 4, 1999

Before KING, Chief Judge, WIENER and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Appellant Gregory Porobil appeals a bankruptcy court's order
denying him a discharge of his debts under Chapter 7 of the
bankruptcy code, 11 U.S.C. §§ 701-766, based on allegedly
fraudulent statements that Porobil included in his application
for bankruptcy relief.  We affirm.

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I. FACTUAL & PROCEDURAL BACKGROUND

Appellant Gregory Porobil filed a petition for protection under Chapter 7 of the bankruptcy code on December 14, 1995. Porobil, an attorney practicing in Louisiana, stated in a schedule attached to his petition that he held an interest of unknown value in a professional law corporation bearing his name (the PLC). Porobil stated that he had an employment agreement with the PLC and had received $25,000 in salary since January 1, 1995. Porobil listed no other interest in any incorporated or unincorporated business in the schedules attached to his petition, and he marked "[n]one" when asked on his Statement of Financial Affairs to "list the names and addresses of all businesses in which [he] was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was [a] self-employed professional within the two years immediately preceding the commencement of this case, or in which [he] owned 5 percent or more of the voting or equity securities within the two years immediately preceding the commencement of this case." Finally, Porobil listed appellee Sandra Autry, the receiver of Comco Insurance Company (Comco), as an unsecured creditor in the amount of $748,518.43 resulting from a 1993 judgment in favor of Comco.

Autry filed a complaint to deny Porobil discharge under 11 U.S.C. § 727(a)(2), (4), and (5) on March 18, 1996.[1] Autry

_____

[1] Section 727(a) provides, in part, that the court shall grant a discharge unless:

alleged, <u>inter alia</u>, that Porobil had failed to reveal properly both his ownership interest in an insurance company named Southern Assurance, Inc. (SA) and his interest in a salary and legal fees from the PLC. Specifically, Autry asserted that Porobil owned one hundred percent of SA's stock, was entitled to $100,000 per year in salary from the PLC, and collected a fee in excess of $24,000 six days after filing his Chapter 7 petition. Autry claimed that the "overwhelming majority" of the fee was earned prior to Porobil's bankruptcy filing, and that the fee resulted from the settlement of a case (the Fenasci case) that was at least partially negotiated prior to the filing. Autry argued that, in light of the above information, Porobil knowingly and fraudulently made false statements in his Chapter 7 petition and therefore should be denied a discharge of his debts.

-------------------

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
    (A) property of the debtor, within one year before the date of the filing of the petition; or
    (B) property of the estate, after the date of the filing of the petition;

. . .

(4) the debtor knowingly and fraudulently, in or in connection with the case--
    (A) made a false oath or account; [or]

    . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

3

The bankruptcy court heard evidence regarding Autry's complaint and entered an order denying Porobil discharge on October 15, 1997. Although the bankruptcy court found insufficient evidence to support Autry's claims under 11 U.S.C. § 727(a)(2) and (a)(5), the court determined that Porobil's failure to disclose his fees from his interest in the Fenasci case and his failure to disclose his connection with SA were both material to a determination of Porobil's true financial condition. The court found that "[i]t is obvious that [Porobil] must have put in the bulk of his time on the Fenasci case pre-petition," and that his omission of either the fees themselves or his contingent interest in the case was a false statement. Furthermore, the court did "not find it credible" that Porobil did not know that SA was still doing business in the two years prior to his filing, pointing to tax returns that indicated that SA had gross receipts of $1,749,456 in 1993 and $137,715 in 1994, and a net income of $4238 in 1995. The court concluded that "[t]he effect of the Debtor's multiple omissions and the failure to clear them up with the filing of amended schedules evidence to the Court a reckless disregard for the truth and, thus, the intent to deceive required for § 727(a)(4)(A)." The United States District Court for the Eastern District of Louisiana affirmed the order denying discharge, see Autry v. Porobil, No. CIV.A.98-288, 1998 WL 395137, at *1 (E.D. La. July 14, 1998), and Porobil timely appeals.

4

Porobil argues on appeal that he was not required to disclose his ownership interest in SA in either the schedules attached to his Chapter 7 petition or the Statement of Financial Affairs because SA "ceased operations and closed its doors in March, 1995," and was defunct at the time of filing. Porobil argues that SA had no assets or other value, and that therefore his failure to list his interest in it caused no prejudice. Porobil asserts that his omission of SA "did not rise to the level of making a knowing and fraudulent false oath" because he "believed, at the time he executed the schedules[,] that the information contained therein was both truthful and all that was required." In addition, Porobil argues that he was not required to disclose the fee from the Fenasci case because the fee was received by the PLC and not by Porobil personally.

We review the bankruptcy court's findings of fact under the clearly erroneous standard, but the court's conclusions of law are subject to de novo review. See In re Beaubouef, 966 F.2d 174, 177 (5th Cir. 1992). To prevail on her claim that Porobil is not entitled to discharge under 11 U.S.C. § 727(a)(4)(A), Autry must demonstrate that: (1) Porobil made a statement under oath; (2) the statement was false; (3) Porobil knew the statement was false; (4) Porobil made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. See Beaubouef, 966 F.2d at 178. We have previously determined that false oaths that are "sufficient to justify the denial of

5

discharge include '(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings.'"  Id. (quoting 4 COLLIER ON BANKRUPTCY ¶ 727.04[1] (15th ed. 1992)).

We agree with the district court's determination that the first three elements outlined above "are clearly met" with respect to Porobil's failure to disclose his interest and role in SA.  Autry, 1998 WL 395137, at *2.  Porobil admits that he owned all the stock of SA when he filed his Chapter 7 petition, and his failure to list this interest in either the schedule or his Statement of Financial Affairs renders both disclosures, which were both made under oath, false.  Furthermore, we agree with the district court that, "given the tax returns of SA for 1994 and 1995, the bankruptcy court did not clearly err when it found that Porobil knew the statements were false."  Id.

Porobil claims that "the mere omission of property from the schedules does not necessarily establish fraudulent intent on the part of the debtor," quoting In re Woerner, 66 B.R. 964, 973 (Bankr. E.D. Pa. 1986), and that his failure to list SA "was not an attempt to conceal his former interests in it, nor . . . the result of any intent to hinder, delay, or defraud the Receiver." The bankruptcy court rejected these arguments and found that the evidence presented at trial showed that Porobil made "knowing and fraudulent false oaths" because he made multiple omissions in his schedules and Statement of Financial Affairs, did not rectify these omissions by filing amended schedules, and had "doubtful

6

credibility in certain areas of explanation."  After carefully reviewing the record and granting due deference to the trial court on issues of credibility, we find no clear error in its conclusion that Porobil intended to fraudulently omit relevant information from the schedules and Statement of Financial Affairs.  See In re Cline, 48 B.R. 581, 584 (Bankr. E.D. Tenn. 1985) ("It is sufficient [to find fraudulent intent] if the debtor knows the truth and nonetheless willfully and intentionally swears to what is false."); 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][a] (15th ed. rev. 1999) ("The requisite intent [to defraud] . . . may be discovered by inference from the facts.").

Porobil, quoting In re Lineberry, 55 B.R. 510, 513 (Bankr. W.D. Ky. 1985), argues that "a debtor who, without fraud, omits from his sworn schedules property of no value is not guilty of making a false and fraudulent oath," and that "[i]f the false oath pertains to an asset of de minimis value . . . this may tend to vitiate the debtor's fraudulent intent." In re Arcuri, 116 B.R. 873, 881 (Bankr. S.D.N.Y. 1990).  Porobil thus attempts to use his assertion that SA has no value to challenge the bankruptcy court's findings of both fraudulent intent and materiality.  Porobil's effort fails, however, because we see no clear error in the district court's finding, based on tax returns indicating net income as recently as 1995, that SA continued to conduct business in 1993 and 1994 and that its omission from Porobil's Chapter 7 petition was both material and detrimental to an accurate determination of his financial condition.  See

7

<u>Beaubouef</u>, 966 F.2d at 178 ("'The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'") (quoting <u>In re Chalik</u>, 748 F.2d 616, 617 (11th Cir. 1984)). Furthermore, as we stated in <u>Beaubouef</u>,

> "The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them. The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act."

<u>Id.</u> (quoting <u>Chalik</u>, 748 F.2d at 617). We therefore conclude that the bankruptcy court properly denied Porobil discharge under 11 U.S.C. § 727(a)(4)(A).[2]

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court affirming the judgment of the bankruptcy court.

---

[2] Because we determine that the bankruptcy court properly denied Porobil discharge after finding that he knowingly and fraudulently made a false oath by omitting information relating to his interest and role in SA in both the schedules and the Statement of Financial Affairs attached to his Chapter 7 petition, we need not consider the bankruptcy court's finding that Porobil also made a false oath in violation of 11 U.S.C. § 727(a)(4)(A) by failing to include information relating to fees from the settlement of the Fenasci case.