In re Sheila A. OODY, Debtor.

William T. Hendon, Trustee, Plaintiff,

v.

Sheila A. Oody, Defendant.

Bankruptcy No. 99–33156.
Adversary No. 00–3006.

United States Bankruptcy Court,
E.D. Tennessee.

May 1, 2000.

David L. McCord, McCord, Troutman & Irwin, P.C., Knoxville, TN, for Plaintiff, William T. Hendon, Trustee.

Maurice K. Guinn, Gentry, Tipton, Kizer & McLemore, P.C., Knoxville, TN, for Defendant, Sheila A. Oody.

### *MEMORANDUM ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

RICHARD S. STAIR, Jr., Chief Judge.

On January 24, 2000, Chapter 7 Trustee William T. Hendon filed a Complaint Objecting to Discharge of the Debtor's debts under 11 U.S.C.A. § 727(a)(4)(A) and (B) (West 1993). The Debtor filed a Motion for Summary Judgment on February 23, 2000, accompanied by the February 22, 2000 affidavits of the Debtor, Travis Hardy, and O.R. Phelps, and a Memorandum Brief of Sheila A. Oody in Support of Motion for Summary Judgment. The Trustee filed his Response to Motion for Summary Judgment Filed by Sheila A. Oody and a supporting Memorandum in Support of Response to Motion for Summary Judgment on March 23, 2000. To that response, the Trustee appended excerpts from the sworn testimony of Sheila A. Oody and O.R. Phelps given in Rule 2004 examinations on November 11, 1999, and January 17, 2000, respectively. The Trustee has also filed the affidavits of Sharon H. Reagan, Bonnie Wear, and Ross Millsaps, dated March 16, 2000, March 21, 2000, and March 23, 2000, respectively. He filed his own March 23, 2000 affidavit on March 24, 2000. The court heard oral argument of the Debtor's motion on April 6, 2000.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(J) (West 1993).

### I

The Debtor filed her petition under Chapter 7 on August 2, 1999. She filed her statement of financial affairs and schedules on August 11, 1999. On Schedule D, the Debtor listed her father, O.R. Phelps, as a creditor holding a $50,000.00 claim secured by a third mortgage on her residence. In addition, the Debtor disclosed in her statement of financial affairs that she held a 1992 Kawasaki waverunner at her home which belongs to Travis Hardy.

The Trustee brought this adversary proceeding, alleging that the Debtor does not owe a $50,000.00 debt to her father and that she does have an ownership interest in the waverunner. He seeks the denial of the Debtor's discharge under § 727(a)(4)(A) for her allegedly false statement that she does not own the waverunner and under § 727(a)(4)(B) for presenting the allegedly false claim of her father. The Debtor maintains that neither the statement nor the claim is false.

### II

The Debtor asserts that she owes a debt to her father stemming from her purchase

of real property from him and the repayment of his financial assistance to her from 1994 through 1999. In her affidavit, the Debtor states that she and her children moved into her parents' home when she separated from her husband in 1993; that she and her husband were divorced in 1994; that in 1994 she and her father estimated that she would need approximately $25,000.00 for living expenses in addition to her income; and that he agreed to loan that amount to her. In addition, the Debtor stated that her father agreed to sell her a lot located at 5142 Scenic Drive, Lenoir City, Tennessee, and that she and her two children have lived in a home on the property since June 1997. The Debtor also stated that in consideration for the loan and lot she executed a note in the amount of $50,000.00 payable to her father with a maturity date of December 2008. The note, which is appended to the Debtor's affidavit, is dated December 15, 1994, provides for an interest rate of three percent, and does not require the Debtor to make any payments before the maturity date.

On October 15, 1994, the Debtor's parents executed a Warranty Deed for the property for the Debtor, which was recorded in the Loudon County, Tennessee, Register's Office two days later. The Warranty Deed is appended to the Affidavit of Sharon H. Reagan who prepared the deed as an employee of the Phelpses' attorney. She stated in her affidavit that O.R. Phelps instructed her to state the value of the property as $10,000.00 in the affirmation of value that appears on the Warranty Deed. She also stated that the Phelpses sold the lot adjoining 5142 Scenic Drive to their son, that she prepared a Warranty Deed for the Phelpses to give to him, and that O.R. Phelps instructed her to state the value of the property as $11,000.00 in the

affirmation of value that appears on that Warranty Deed.

In addition, the Trustee submits, through the Affidavit of Bonnie Wear, the Register of Deeds for Loudon County, Tennessee, a copy of O.R. Phelps' receipt for his payment of the fees and taxes paid at the October 1994 registration of the Warranty Deed. The receipt indicates that the fees and taxes were figured based on the amount of $10,000.00, which appears on the receipt as the "[g]reater of [c]onsideration or [v]alue" of the land conveyance. In addition, the Trustee submits through the Affidavit of Bonnie Wear the slip from the deposit of the payment, which indicates that O.R. Phelps made the payment with a check.

More than three years later, on May 21, 1998, the Debtor secured the $50,000.00 note to her father by executing a Deed of Trust for the property which was registered in the Loudon County, Tennessee, Register's Office that day. O.R. Phelps, in his testimony at the Rule 2004 examination, explained that because of the family relationship between himself and the Debtor he had not been concerned about obtaining a deed of trust immediately after the sale. He testified that he had the Debtor execute and register the Deed of Trust in 1998 when a creditor, Troyse Ward, began demanding payment from her.[1]

In her affidavit, the Debtor also states that she has transferred deeds of trust covering the property to Volunteer Federal Savings & Loan, O.R. Phelps, and BankFirst. In her schedules, she lists Volunteer Federal Savings & Loan as the first mortgagee, BankFirst as the second, and O.R. Phelps as the third. Appended to the Trustee's response, together with excerpts of the Debtor's testimony from the 2004 examination, is a Volunteer Federal Savings & Loan Uniform Residential Loan Application signed by the Debtor on July 7, 1998.[2] She testified that she signed the

---

1. On July 10, 1998, Troyse Ward filed a complaint against the Debtor in the Chancery Court for Loudon County, Tennessee, seeking

payment of an account with a third party that he used in the construction of her home.

2. At oral argument, the Debtor's attorney represented to the court that the July 7, 1998

application in order to convert her home construction loan to a permanent mortgage and that she provided Volunteer Federal Savings & Loan with the information necessary to complete the application. She did not include her father on that application as a creditor when asked to list her creditors.

In addition, through the affidavit of BankFirst Vice President Ross Millsaps, the Trustee submits a copy of another Uniform Residential Loan Application signed by the Debtor on March 18, 1999, in order to obtain a loan from BankFirst. Although the Debtor's note payable to O.R. Phelps was still outstanding and O.R. Phelps' Deed of Trust had been registered by the date of that application, the Debtor did not list her father as a creditor on the application. The Debtor explains in her affidavit that BankFirst asked her about the Deed of Trust after discovering it and that O.R. Phelps agreed to subordinate his Deed of Trust to that of BankFirst when it agreed to loan $6,000.00 to the Debtor in April 1999.

O.R. Phelps, in his affidavit, repeats much of what the Debtor states. In addition, he states that before he transferred the property to the Debtor he was told by someone in the real estate business that the value of the property was not less than $25,000.00;[3] that the transfer of the property was not a gift; that he sold the adjacent lot to his son in exchange for a note in the amount of $25,000.00; that he paid weekly grocery bills for the Debtor in the amount of $100.00 for four years and numerous other bills from 1994 through August 1999 under the agreement to loan the Debtor $25,000.00; that the Debtor owes him at least $50,000.00; and that he does expect to be paid for the debt even though he has told the Debtor not to worry about it.

## III

In her affidavit, the Debtor states that Travis Hardy purchased a waverunner in 1998 which he permits her to possess and use with her children. She explains that it is registered in her name because Travis Hardy wanted to avoid liability that may be caused by its use while in her possession. She states that he is the owner of the waverunner and that she has never had an ownership interest in it.

In his affidavit, Travis Hardy states that the waverunner at issue is one of two that he purchased in June 1998 from Dean Sanders for $4,800.00; that he has made all of the installment payments on the waverunners; that he permits the Debtor to use the waverunner; that he permitted the Debtor to register the waverunner in her name in order to limit his liability that may be caused by its use while in her possession; that he is the owner of the waverunner; and that he did not give the waverunner to her as a gift. Appended to Travis Hardy's affidavit is the first page of a letter which purports to be a written confirmation from Dean Sanders of an oral contract between himself and Travis Hardy for the purchase of two waverunners.[4]

date was an error and should have been July 7, 1997.

**3.** In his brief and in the oral arguments, the Trustee argues that the court may not consider this statement because it is inadmissible hearsay. He makes the same argument with regard to a letter appended to the Affidavit of Travis Hardy. Nonetheless, the court may consider the hearsay evidence because the Trustee did not file a motion to strike or other objection to the portions of the affidavits which he asserts would be inadmissible. See Noblett v. General Elec. Credit Corp., 400 F.2d 442, 445 (10th Cir.1968) ("An affidavit that does not measure up to the standards of Rule 56(e) is subject to a motion to strike; and formal defects are waived in the absence of a motion or other objection."); see also Wiley v. United States, 20 F.3d 222, 226 (6th Cir.1994) (finding that an objection to the admissibility of evidence contained in an affidavit is waived if not raised in a timely manner). The weight to be accorded such evidence is, however, another matter.

**4.** See supra n. 3.

Through the Affidavit of BankFirst Vice President Ross Millsaps, the Trustee submits a copy of a Uniform Residential Loan Application signed by the Debtor on March 18, 1999. On that application, the Debtor lists the waverunner as her own asset.

## IV

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court must grant summary judgment only if no genuine issues of material fact exist and if a party is entitled to a judgment as a matter of law. *See Hall v. Tollett,* 128 F.3d 418, 421–22 (6th Cir. 1997). In making its determination, the court must consider " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . .' " *Id.* (quoting FED. R. CIV. P. 56(c)). The substantive law of the underlying action will dictate which facts are material for the purposes of summary judgment. *See Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 199 (6th Cir. BAP 1998) (citing *Hanover Ins. Co. v. American Eng'g Co.,* 33 F.3d 727, 730 (6th Cir.1994)).

The Supreme Court analyzed the standard for summary judgment in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2509–512, 91 L.Ed.2d 202 (1986). The Court focused its inquiry on the issue of whether a dispute concerning a material fact is " 'genuine.' " *See id.* Delivering the Court's opinion, Justice White wrote,

Our prior decisions may not have uniformly recited the same language in describing genuine factual issues under Rule 56, but it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. As [the recent decisions] indicate, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Id.* at 249–50, 106 S.Ct. at 2510–11 (footnote and citations omitted).

Following *Anderson,* the Sixth Circuit has employed the following statement of the summary judgment standard:

The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Pinney Dock & Transport Co. v. Penn Cent. Corp.,* 196 F.3d 617, 622 (6th Cir. 1999) (quoting *Anderson,* 106 S.Ct. at 2512).

In addition, "[w]hen the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.' " *Nebraska v. Wyoming,* 507 U.S. 584, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). In considering a motion for summary judgment, the court "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson,* 106 S.Ct. at 2513; *see also Nebraska,* 113 S.Ct. at 1694. It must believe the evidence presented by the nonmovant and draw all justifiable inferences in favor of the nonmovant. *See id.*

Finally, summary judgment will be precluded if the credibility of witnesses has been put at issue with regard to a disputed material fact. *See, e.g., Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir.1994) (finding that the district court erred in granting summary judgment "where issues of credibility were determinative of the case at hand"). Where the movant has supported its motion properly, the nonmovant "may not respond simply with general attacks upon the defendant's credibility, but must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent [element]." *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citing *Anderson,* 106 S.Ct. at 2514); *see also* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2726 (3d ed. 1998) ("Clearly, if the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial, as this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact.") (footnote omitted).

## V

■ Bankruptcy Code § 727(a)(4) provides in material part as follows:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim[.]

11 U.S.C.A. § 727(a)(4). The party objecting to the debtor's discharge carries the burden of proof by a preponderance of the evidence. *See Barclays/American Bus. Credit, Inc. v. Adams (In re Adams),* 31 F.3d 389, 394 (6th Cir.1994). In order to preserve the " 'fresh start' policy underlying the bankruptcy code, these exceptions to discharge should be construed strictly against the [objector] and liberally in favor of the debtor." *Wazeter v. Michigan Nat'l Bank (In re Wazeter),* 209 B.R. 222, 226 (W.D.Mich.1997); *see also American Gen. Fin., Inc. v. Burnside (In re Burnside),* 209 B.R. 867, 871 (Bankr.N.D.Ohio 1997).

■ To prevail under § 727(a)(4)(A), the Plaintiff must prove that: (1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *See Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir.1992); *Bensenville Comm. Ctr. Union v. Bailey (In re Bailey),* 147 B.R. 157, 162 (Bankr.N.D.Ill. 1992).

■ There is little case law applying § 727(a)(4)(B). *See A.V. Reilly Int'l, Ltd. v. Rosenzweig (In re Rosenzweig),* 237 B.R. 453, 458 (Bankr.N.D.Ill.1999), *motion to amend denied,* 239 B.R. 905 (Bankr. N.D.Ill.1999). The courts that have considered objections to discharge for presenting a false claim have required the objecting party to prove that the debtor "presented or used an inflated or fictitious claim." *Painewebber Inc. v. Gollomp (In re Gollomp),* 198 B.R. 433, 439 (S.D.N.Y. 1996); *see also Garcia v. Garcia (In re Garcia),* 168 B.R. 403, 407 (D.Ariz.1994) ("In order to deny a debtor's discharge under section 727(a)(4)(B), the debtor must have presented an inflated or fictitious claim.").

This court has denied discharge to a debtor under § 727(a)(4)(A) and (B) where the debtor substantially overstated a debt to his father-in-law. *See Pigott v. Cline (In re Cline),* 48 B.R. 581 (Bankr. E.D.Tenn.1985). In *Cline,* the debtor and his father-in-law executed a note, secured by the father-in-law's certificates of deposit, in favor of a bank in order to borrow

$20,000.00 for the debtor's use. *See id.* at 582. At its maturity, the debtor paid the bank $8,000.00 and executed a renewal note with the father-in-law. *See id.* at 583. When that note matured, the debtor borrowed approximately $4,400.00 from the father-in-law in order to make a payment, and the two men executed another renewal note in the amount of $10,900.00. *See id.* Upon maturity of that note, the father-in-law executed a note to satisfy the second renewal note and paid that note in full when it matured, which occurred postpetition. *See id.* The debtor had never executed a note in favor of his father-in-law, however, he and his wife did execute a deed of trust against their residence in favor of the father-in-law soon after the execution of the original note. *See id.* The deed of trust purported to secure a $20,000.00 personal loan to the debtors as well as a prior loan from the father-in-law to them. *See id.* The deed of trust was not properly acknowledged or recorded until after the execution of the second renewal. *See id.* A few days after the recording of the deed of trust, the debtor and his wife filed a petition in bankruptcy. *See id.* The debtor scheduled the father-in-law as a secured creditor in the amount of $29,000.00. *See id.* Then, without consulting his father-in-law, he completed a proof of claim on behalf of his father-in-law, signed his father-in-law's name thereon, and filed the proof of claim. *See id.*

The court denied the debtor's discharge under § 727(a)(4)(A) and (B) for overstating that claim as well as a claim to another creditor.[5] *See id.* at 585. It held that the overstatement of the claims was a material falsity which created a "mistaken belief that the liens against the debtors' residence exceeded its fair market value by $25,000." *Id.* The court explained that the

debtor was not indebted to his father-in-law for more than $5,400.00, which included the $4,400.00 loan to repay a portion of the note at the maturity of the first renewal note and $1,000.00 from a previous loan, and that he may be liable to the father-in-law for a contingent claim of $10,900.00 in satisfaction of the second renewal note. *See id.* The court determined that the debtor's assertion that he felt that he owed his father-in-law $29,000.00 lacked credibility and denied the debtor's discharge. *See id.*

## VI

▉ The Debtor relies on her affidavit and the Affidavit of Travis Hardy, both of which explain that Travis Hardy permits the Debtor to hold and use the waverunner and title it in her name. She contends that the fact that the waverunner is titled in her name does not prove that she owns the waverunner. She is correct. In Tennessee, "[i]t has been held a number of times by our courts that the intention of the parties, not the certificate of title, determines the ownership of an automobile."[6] *Smith v. Smith,* 650 S.W.2d 54, 56 (Tenn.Ct.App.1983) (collecting cases). The Debtor also argues that her statement on a loan application does not change the fact that she was truthful when she disclosed in her bankruptcy that she does not own the waverunner.

The Trustee argues, however, that the title in her name combined with the facts that she possesses and uses the waverunner and that she claimed it as her own asset on a loan application shortly before filing bankruptcy indicates that the parties did intend for her to have some ownership interest in the waverunner.[7]

---

5. The court granted the discharge of the debtor's wife. *See Cline,* 48 B.R. at 585.

6. "Motor vehicle" is defined by TENN. CODE ANN. § 55–1–103(3) (1998), in pertinent part, as "every vehicle which is self-propelled . . . ."

7. The Debtor's attorney explained during oral argument that the Debtor listed the waverunner as her asset in the loan application because she believed that she was supposed to list assets titled in her name. That explanation has not been submitted to the court in the manner required by Rule 56(e) and thus cannot be considered. See Fed.R.Civ.P. 56(e)

Just as important is the Trustee's challenge of the Debtor's credibility based on the discrepancy in the loan application and her affidavit. He has challenged her credibility with affirmative evidence rather than general attacks. Further, the affirmative evidence that he presents to challenge her credibility is no less than her own statement and it is directly related to a material fact at issue.

The court cannot conclude from those facts that the evidence is so one-sided that the Debtor must prevail under § 727(a)(4)(A). The Debtor's Motion for Summary Judgment will be denied with respect to the Trustee's claim under § 727(a)(4)(A).

### VII

■■■ The Debtor maintains that she owes her father $50,000.00 and that the note, Deed of Trust, and affidavits establish the validity of the debt. The Trustee argues first that the Debtor did not owe O.R. Phelps $25,000.00 for the loan for living expenses because she did not receive that amount when she executed the note. Nonetheless, he has not presented any evidence to dispute the statement in O.R. Phelps' affidavit that he paid at least $25,-000.00 for the Debtor's living expenses subsequent to the execution of the note.[8] "As a general rule, an executory contract or a promise to perform in the future constitutes sufficient consideration for commercial paper." 11 AMJUR 2D, *Bills and Notes* § 149 (1997). O.R. Phelps' promise to provide $25,000.00 in living expenses in the future was adequate consideration for $25,000.00 of the debt represented in the note. Thus, with regard to that portion of the $50,000.00 debt, there is no genuine dispute of a material fact.

Regarding the $25,000.00 debt for the sale of the real property, the Debtor argues that the existence of the note and

Deed of Trust establish that there was in fact a debt for $50,000.00, and the affidavits of the Debtor and her father support that conclusion. The Debtor's own omissions, however, contradict the note, Deed of Trust, and her affidavit. Specifically, she has twice failed to list her father as a creditor when asked to list creditors for the purpose of completing loan applications. No evidence has been offered to explain the discrepancy. The Trustee argues that those omissions raise a dispute as to the validity of the debt. He contends that the omissions also raise an issue regarding the Debtor's credibility.

Further, the Trustee argues that prior statements of O.R. Phelps contradict the note, Deed of Trust, and affidavits, and show that the Debtor did not give $25,-000.00 in consideration for the property. Specifically, he points to the fact that O.R. Phelps instructed Sharon H. Reagan to state the higher of the value or consideration given for the property at 5142 Scenic Drive to be stated as $10,000.00, and that he paid registration fees for the registering of the Warranty Deed based on that $10,000.00 figure. That $10,000.00 figure directly contradicts statements in O.R. Phelps' affidavit that he had been informed before the sale that the property was worth no less than $25,000.00 at the time of the sale and that the sale price of the property, together with the $25,000.00 loan, constituted the consideration for the $50,000.00 note. There has been no evidence to explain this discrepancy.

The discrepancy between the Debtor's omissions and the evidence that she now presents is material to the issue of whether the Debtor owes a debt to O.R. Phelps. The discrepancy between the $10,000.00 figure previously used by O.R. Phelps and the Debtor's evidence is material to the issue of whether any existing debt has

(detailing the proper form for submitting affidavits and other testimony for consideration under a motion for summary judgment).

8. O.R. Phelps stated in his affidavit that he has paid grocery bills of $100.00 each week from 1994 through August 1999 in addition to other bills.

been inflated from $35,000.00 to $50,000.00. Further, the Trustee uses those discrepancies to challenge the credibility of O.R. Phelps and the Debtor. Again, the discrepancies are affirmative evidence disputing the credibility of the Debtor and O.R. Phelps on facts that are material to the issues under § 727(a)(4)(B).

Based on the record before it, the court cannot conclude that the facts are so one-sided that the Debtor must prevail under § 727(a)(4)(B). The Debtor's Motion for Summary Judgment will be denied with respect to the Trustee's claim under § 727(a)(4)(B).

## VIII

Summary judgment is not appropriate with respect to the Trustee's claims under § 727(a)(4)(A) or (B). The Debtor's Motion for Summary Judgment must be denied. An appropriate order will be entered.